**MEYRING LIVESTOCK COMPANY and Wade Ranch, Inc., Plaintiffs-Appellants,**

v.

**WAMSLEY CATTLE COMPANY, Walden Reservoir Company, Michigan River Water Conservancy District, North Park Angus Ranch, Inc., Jeris Danielson, Colorado State Engineer, and Wesley E. Signs, Division Engineer, Water Division No. 6, Defendants-Appellees.**

No. 82SA183.

Supreme Court of Colorado, En Banc.

Aug. 27, 1984.

Alden T. Hill, Jeffrey L. Dykes, Hill & Hill, P.C., Fort Collins, for plaintiffs-appellants.

Duane Woodard, Atty. Gen., Charles B. Howe, Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Jeffrey J. Kahn, William A. Paddock, Asst. Attys. Gen., Denver, for defendants-appellees Colorado State Engineer Jeris Danielson and Div. Engineer Wesley E. Signs.

Daniel J. Kaup, Walden, for defendants-appellees Walden Reservoir Co., Michigan River Water Conservancy Dist. and North Park Angus Ranch, Inc.

DUBOFSKY, Justice.

The plaintiffs, Meyring Livestock Company and Wade Ranch, Inc., appeal a judgment of the district court for Water Division 6 denying their petition to correct alleged clerical errors and inconsistencies in a storage decree entered November 26, 1932. The court ruled that the petition was barred by the statutes of limitations in section 37–92–304(10), 15 C.R.S. (1973) and 148–19–1, C.R.S. (1963). It further held that the petition was barred by the doctrines of *res judicata* and collateral estoppel. We reverse the water court ruling and remand the case for a further hearing on whether the error in the decree is clerical.

■ The plaintiffs and their predecessors in interest have owned the Slack and Weiss Reservoir (reservoir) and the storage rights in it since 1890.[1] They claim to have historically filled the reservoir to a depth ten feet above the reservoir's outlet which results in storage of 108 acre feet of water. They also claim that each year without interruption they have used all the water stored in the reservoir.

The issue in this appeal arises from a storage decree for the reservoir entered November 26, 1932. The decree states in part:

It is hereby adjudged and decreed that there be allowed to flow into said reservoir each season from said stream ... sufficient water to fill said reservoir to a height of 10 feet above the base of outlet tube, estimated at 350,000 cubic feet.

The decree indicates that water historically had been stored at the height of ten feet under a reservoir priority of June 3, 1890, and states that the decree is subject to former decrees respecting the reservoir.

The alleged error in the decree is the language allowing water sufficient to fill the reservoir "to a height of 10 feet ..., estimated at 350,000 cubic feet." 350,000 cubic feet is approximately eight acre feet of water. The plaintiffs assert that 108 acre feet are required to fill the reservoir to a height of ten feet.

In 1978, the State Engineer's office published a tabulation required by section 37–92–402, 15 C.R.S. (1978 & 1983 Supp.) which indicated that the plaintiffs had an adjudicated right to store only eight acre feet in their reservoir. The plaintiffs then brought this action petitioning the water court to correct the alleged clerical error in the 1932 decree to reflect that the decree had adjudicated a right to store water in the reservoir at a height of ten feet or approximately 108 acre feet. The plaintiffs also requested the Division Engineer to correct the alleged error in the tabulation. The Division Engineer refused, and the plaintiffs asked the water court to order the tabulation amended.

The water court initially granted the petition to correct on October 2, 1980, and decreed that the plaintiffs be allowed to store 108 acre feet with a priority date of 1890. Following publication of this decree, Wamsley Cattle Company, Walden Reservoir Company, Michigan River Water Conservancy District, and North Park Angus Ranch (objectors) filed objections to the decree.[2] The court subsequently determined that its October 2 decree was premature and set the matter for further hearing. On March 27, 1981, the court vacated its earlier order, and, following the submission of pretrial statements and briefs by the parties, denied the plaintiffs' petition on March 12, 1982 without an evidentiary hearing. In its order denying the petition, the court concluded that the error in the 1932 decree is judicial rather than clerical, and that the plaintiffs' petition is barred by

**1.** Because the water court entered its order prior to an evidentiary hearing, we must accept the facts alleged by the plaintiffs. *Bailey v. Clausen,* 192 Colo. 297, 557 P.2d 1207 (1976); *Rocky*

*Mountain Power Co. v. White River Electric Ass'n,* 151 Colo. 45, 376 P.2d 158 (1962).

**2.** All of the objectors except Wamsley Cattle Company are parties to this appeal.

statutes of limitations and the doctrines of *res judicata* and collateral estoppel. The court's decision also implicitly denied the plaintiffs' request for an order requiring amendment of the state tabulation.

The plaintiffs assert on appeal that the water court was wrong in holding that the error in the 1932 decree is judicial. The plaintiffs also argue that the objectors below did not have standing. We conclude that the objectors did have standing, but reverse the water court's ruling. The plaintiffs established a prima facie showing of a clerical error, and the water court should not have ruled without a hearing. Therefore, we remand the case for a hearing on the character of the error in the 1932 decree.

## I.

■ The plaintiffs argue that the objectors were without standing to object to the October 1980 court order correcting the 1932 decree. We disagree. The plaintiffs filed a petition asking that the 1932 decree be corrected so that the state's tabulation would indicate a right to store 100 additional acre feet of water. The water court initially granted the petition without notice to any party with junior storage appropriations. Once the amended decree was published, junior appropriators objected, alleging that allowing a senior appropriator to increase its storage by 100 acre feet at an early priority could adversely affect their ability to fill their reservoirs to adjudicated capacity.[3] Because a junior appropriator is the party most interested when a senior appropriator seeks to amend an earlier decree to indicate a right to store a larger amount of water, the water court correctly allowed the junior appropriators to file briefs challenging the plaintiffs' petition to correct their decree.

## II.

### A.

The primary issue before us is whether the water court was correct in determining that the error in the 1932 decree is judicial and not clerical. Assuming the facts as alleged by the plaintiffs, the 1932 decree contains inconsistent descriptions of the amount of water subject to the decree. A storage depth of ten feet in the reservoir equals 108 acre feet, while 350,000 cubic feet is eight acre feet.

This court has held that the term clerical error should not be construed in a narrow sense. In *Bessemer Irrigating Co. v. West Pueblo Ditch and Reservoir Co.*, 65 Colo. 258, 176 P. 302 (1918), the court ruled:

> The term "clerical error" as here used must not be taken in too narrow a sense. It includes not only errors made by the clerk in entering the judgment, but also those mistakes apparent on the face of the record, whether made by the court or counsel during the progress of the case, which cannot reasonably be attributed to the exercise of judicial consideration or discretion.

176 P. at 303. *See also Telluride Co. v. Division Engineer*, 195 Colo. 143, 575 P.2d 1297 (1978).

■ The plaintiffs have made a prima facie showing that the error in the 1932 decree is clerical. They assert that a ten foot depth in the reservoir always has equaled 108 acre feet of water. They claim that the water historically has been used to irrigate 300 acres of land upon which hay is grown and indicate that eight acre feet would be insufficient for irrigation. The plaintiffs have a decree for fourteen cubic

---

**3.** The objectors' specific argument is based on the decision of the United States Supreme Court in *Nebraska v. Wyoming*, 325 U.S. 589, 65 S.Ct. 1332, 89 L.Ed. 1815 (1945), which apportions the waters of the North Platte River. The Slack and Weiss Reservoir, located in Jackson County, receives its water from Ninegar Creek, a tributary of the North Platte River. *Nebraska v. Wyoming* prohibits Colorado from annual stor-

age of more than 17,000 acre feet from the North Platte River or its tributaries in Jackson County for irrigation purposes. The objectors argue that allowing the plaintiffs to store additional water under an early appropriation date might keep junior appropriators from storing their adjudicated water because of the 17,000 acre feet limit.

feet per second from the ditch supplying the reservoir with water. Assuming a reservoir capacity of only eight acre feet, it would take less than seven hours to fill the reservoir under the adjudicated flow. The plaintiffs attached to their petition a 1946 survey by the Colorado Water Conservation Board indicating that the capacity of the reservoir at a depth ten feet above the outlet is 108 acre feet. The plaintiffs assert that they always have filled the reservoir with 108 acre feet of water. Finally, they claim evidence establishing that at the time of the 1932 decree the practice of the court making the decree was to consider storage depth measured from the base of the outlet rather than estimated cubic feet capacity as the figure governing the amount of water appropriated to a reservoir. The inconsistency in the 1932 decree is a clerical error under the facts alleged by the plaintiffs.

■ If a party establishes a prima facie showing of clerical error it becomes "the duty of the trial court to admit and consider all pertinent testimony offered to establish [the intent of the original decree.]" *Bessemer Irrigating Co. v. West Pueblo Ditch and Reservoir Co.*, 176 P. at 304.[4] When examining a decree for clerical error, evidence outside the record of the decree may and should be considered. *West Pueblo Ditch and Reservoir Co. v. Bessemer Irrigating Ditch Co.*, 72 Colo. 224, 210 P. 601 (1922). The water court below erred in not holding a hearing on the issue of whether the error in the 1932 decree is clerical.

■ In concluding that the error is judicial, the water court relied on the testimony of the county engineer in the record of the proceedings for the 1932 decree to the effect that the capacity of the reservoir was 350,000 cubic feet. However, the county engineer also testified that the water was ten feet deep at the outlet when the reservoir was filled to capacity and that the water was used to irrigate 300 acres of land. The plaintiffs should be able to explain the engineer's testimony at a hearing and prove that water at a depth of ten feet in the reservoir equaled 108 acre feet at the time of the testimony. It appears possible from the record that the inconsistent testimony of the county engineer was responsible for the inconsistency in the decree. The fact that there was an error in testimony does not preclude a finding of clerical error. Therefore, we remand this case for a further hearing.

### B.

A related issue is whether this action is timely even assuming a clerical error. The water court ruled that since the error is judicial the petition was untimely brought under C.R.C.P. 60(a), and that, in any event, it is barred by section 37–92–304(10), 15 C.R.S. (1973). The court also held that the petition is barred by section 148–19–1, C.R.S. (1963).

C.R.C.P. 60(a), adopted in 1970, provides that clerical mistakes may be corrected at any time.[5] However, C.R.C.P. 81(a) states that the rules of civil procedure do not govern in special statutory proceedings with inconsistent procedures.[6] Special stat-

---

4. In *Bessemer*, the West Pueblo Ditch Extension decree contained an 1877 priority date which should have been 1887. In ruling that the trial court should have taken testimony, this court observed that the plaintiff "offered to introduce other record testimony to show that no claim for a priority other than of 1887 had ever been made by defendant, and that there are no facts in existence upon which it is or was reasonably possible to award a priority to it as of date December 17th, 1877. Proof was offered also that the decree had been administered as one of 1887 until 1912, and that no claim for a priority of 1877 was ever made until 1912." 176 P. at 304.

5. C.R.C.P. 60(a) provides in pertinent part:
   Clerical mistakes in judgments, orders, or other parts of the record and errors therein arising from oversight or omission may be corrected by the court at any time of its own initiative or on the motion of any party and after such notice, if any, as the court orders.

6. C.R.C.P. 81(a) provides in pertinent part:
   These rules do not govern procedure and practice in any special statutory proceeding insofar as they are inconsistent or in conflict with the procedure and practice provided by the applicable statute.

utory proceedings govern adjudications of water rights.

Section 37–92–304(10), 15 C.R.S. (1973) provides in part:

> Clerical mistakes in said judgment and decree may be corrected by the water judge on his own initiative or on the petition of any person .... Any petition referred to in the preceding sentence shall be filed with the water clerk within three years after the date of the entry of said judgment and decree.

On its face, this section appears to bar this action to reform a clerical error in a 1932 decree. However, section 37–92–304(10) was adopted in 1969, long after the decree in this case was issued. *See* Ch. 373, sec. 1, § 148–21–20(10), 1969 Colo.Sess.Laws 1200, 1210. The issue, therefore, becomes whether section 37–92–304(10) applies to 1932 decrees.

■ The general rule in Colorado is that statutes of limitations are applied prospectively unless a contrary intention is clearly expressed by the legislature. *State Highway Department v. Stunkard*, 115 Colo. 358, 174 P.2d 346 (1946); *Jones v. O'Connell*, 87 Colo. 103, 285 P. 762 (1930); *Bonfils v. PUC*, 67 Colo. 563, 189 P. 775 (1920). If the legislature does not clearly express its intent that a statute of limitations be

applied retroactively, prior transactions are governed by the statutes in force at the time the cause of action arose. *Bonfils v. PUC*, 189 P. at 779; *United Bank of Denver National Association v. Wright*, 660 P.2d 510 (Colo.App.1983).[7]

■ Section 37–92–304(10) does not indicate that it is to be applied retroactively. The statute in effect in 1932 provided that all parties are deemed to have acquiesced in a water decree four years after the final decree is rendered.[8] However, the four-year limitation did not apply to clerical errors. *Bessemer Irrigating Co. v. West Pueblo Ditch and Reservoir Co.*, 65 Colo. 258, 176 P. 302 (1918). *Bessemer* holds that under the relevant statutes "clerical errors ... may be corrected at any time they can be shown to exist." 176 P. at 304. Therefore, if the water court determines that the error in the 1932 decree is clerical, the error may be corrected.

■ The court also ruled that section 148–19–1, C.R.S. (1963) bars this petition. Section 148–19–1 provided that a water decree should not be set aside for a jurisdictional defect or a defect in the adjudication proceedings if the decree had been in effect, and the water decreed had been used and administered, for eighteen years.[9] Al-

---

7. This rule applies even though the limitation period contained in the new statute has run since the statute's adoption. *State Highway Dep't v. Stunkard*, 115 Colo. 358, 174 P.2d 346 (1946); *Bonfils v. PUC*, 67 Colo. 563, 189 P. 775 (1920).

8. Section 1785 of the Compiled Laws of Colorado (1921) provided:

> After the lapse of four years from the time of rendering a final decree, in any water district, all parties whose interests are thereby affected shall be deemed and held to have acquiesced in the same, except in case of suits before then brought, and thereafter all persons shall be forever barred from setting up any claim to priority of rights to water for irrigation in such water district adverse or contrary to the effect of such decree.

This provision was in effect from 1881 to 1943. *See* Sec. 35, 1881 Colo.Sess.Laws 160; Ch. 190, sec. 25, 1943 Colo.Sess.Laws 613, 631.

9. Section 148–19–1, C.R.S. (1963) provided in part:

> (1)(a) A decree entered by a district court of this state awarding a priority right to a ditch or reservoir shall not be set aside or declared invalid because of any irregularity, failure to give proper notice, or other defect in the adjudication proceedings in which the decree was rendered, or because of any other jurisdictional ground when the following facts exist and are established by competent evidence, to-wit:
>
> (b) Such decree was entered more than eighteen years before the action to set the same aside or have it declared invalid is instituted;
>
> (c) That during a period of eighteen years or more immediately preceding the institution of any such action the water claimed under said priority right, evidenced by such decree, has been continuously and openly beneficially used or applied by the claimant or claimants thereof, whenever the said water was needed for the purposes for which it was appropriated;
>
> (d) That during said period of eighteen years or more immediately preceding the in-

though repealed, this statute is applicable to decrees in use for eighteen years before the repeal of the statute. *Fischer v. Kuiper*, 187 Colo. 221, 529 P.2d 641 (1974). The water court's reliance on section 148-19-1 is misplaced. The plaintiffs did not request that the 1932 decree be set aside; they asked that it be amended to reflect the original intent. Section 148-19-1 is applicable only in actions to set aside decrees or to have them declared invalid. *Upper Harmony Ditch Co. v. Stunkard*, 177 Colo. 6, 492 P.2d 631 (1972).

### C.

The water court ruled that the petition is barred by the doctrines of *res judicata* and collateral estoppel, relying on *Boulder and Weld County Ditch Co. v. Lower Boulder Ditch Co.*, 22 Colo. 115, 43 P. 540 (1895); and *Water Supply and Storage Co. v. Larimer and Weld Irrigation Co.*, 24 Colo. 322, 51 P. 496 (1897). These doctrines do not apply if the error in the 1932 decree is clerical. A clerical error raises the question of what the decree says; it does not involve a challenge to a previous valid decree. *Orchard City Irrigation District v. Whitten*, 146 Colo. 127, 361 P.2d 130 (1961); *North Poudre Irrigation Co. v. Hinderlider*, 112 Colo. 467, 150 P.2d 304 (1944).

### III.

Finally, the plaintiffs request that the state tabulation be amended to reflect an adjudicated storage right of 108 acre feet. The plaintiffs filed their objection to the tabulation under section 37-92-402(5), 15 C.R.S. (1982 Supp.) (Ch. 433, sec. 4, § 37-92-402(5), 1981 Colo.Sess.Laws 1788, 1790), which provided for judicial review of protests to the manner in which water rights were listed in the tabulation.[10] This provision has since been amended and no longer provides for judicial review of the plaintiffs' protest. Section 37-92-402(5), 15 C.R.S. (1983 Supp.).[11] The General Assembly has provided that the tabulation does not enhance or diminish "any cause of action or defense which might otherwise exist concerning the administration of water rights." Section 37-92-401(11), 15 C.R.S. (1983 Supp.). Therefore, the plaintiffs' request that the tabulation be amended is moot.

We reverse the judgment of the water court and remand for a hearing to consider whether the error in the 1932 decree is clerical. If clerical, the decree should be reformed to reflect its original intent.

---

stitution of said action, the water official or officials who had, de facto or de jure, exercised jurisdiction in the water district in which the division works were located, have continuously recognized said decree as though it had been validly entered, and caused or permitted water of the stream from which said water right was adjudicated to be diverted in accordance with the terms of the decree whenever water was available therefrom.

Section 148-19-1 was adopted in 1957, *see* Ch. 290, sec. 1, 1957 Colo.Sess.Laws 874, and repealed in 1969. *See* Ch. 373, sec. 20, 1969 Colo. Sess.Laws 1200, 1223.

**10.** Section 37-92-402(5), 15 C.R.S. (1982 Supp.) provided:

Any person who wishes to protest the manner in which a water right or conditional water right is listed in the tabulation, including any revisions, or the omission of a water right or conditional water right from such tabulation shall file a written protest with the water clerk and with the division engineer not later than July 1, 1984. Such protest shall set forth in detail the facts and legal basis therefor. Service of a copy of the protest or any other document is not necessary for jurisdictional purposes, but the water judge may order service of a copy of the protest or any other document on any person and in any manner which he may deem appropriate. The fee for filing such protest with the water clerk shall be twenty dollars.

**11.** The General Assembly repealed and reenacted section 37-92-402(5) to allow for protests of the abandonment list only. § 37-92-402(5), 15 C.R.S. (1983 Supp.).