**LANDMARK PETROLEUM, INC., Plaintiff–Appellee,**

**and**

**Board of Assessment Appeals, Appellee,**

.v.

**BOARD OF COUNTY COMMISSIONERS OF the COUNTY OF MESA, Respondent–Appellant.**

No. 92CA2018.

Colorado Court of Appeals, Div. I.

Dec. 16, 1993.

Rehearing Denied Feb. 3, 1994.

Dufford, Waldeck, Milburn & Krohn, William H.T. Frey, Grand Junction, for plaintiff-appellee.

No appearance for appellee Bd. of Assessment Appeals.

Maurice L. Dechant, County Atty., Alan N. Hassler, Asst. County Atty., Grand Junction, for respondent-appellant.

Opinion by Judge METZGER.

Respondent, Board of County Commissioners (BOCC), appeals from the order of the State Board of Assessment Appeals (BAA) granting the petition of Landmark Petroleum, Inc., (taxpayer) for an abatement of personal property taxes paid. We affirm.

For the 1991 tax year, the county assessor valued taxpayer's personal property at $20,-000,000. Taxpayer protested the valuation,

and the assessor lowered the value to $18,610,622.

Taxpayer then took the matter to arbitration. Following a hearing, the arbitrator entered an award determining the value of the property. The award stated: "[T]he *actual value* of the property ... should be adjusted to $834,828 plus additions of $1,769,672 for a total adjusted value of $2,604,500...." (emphasis added) The arbitrator then stated his reasons for that valuation. On the last page of the award, however, the arbitrator summed up his position, stating: "[A]ccordingly, I find that the *assessed value* ... is $2,604,500 as of June 30, 1990." (emphasis added)

Based on the arbitrator's statement that the assessed value was $2,604,500, the assessor's office entered an actual value for the property of $8,981,034.

The BOCC appealed the arbitrator's decision to the district court. In February 1992, the district court granted taxpayer's motion to dismiss, finding the arbitrator's decision was final and not subject to review. The BOCC did not appeal that determination.

On March 10, 1992, the arbitrator sent the BOCC a letter and an "Amended Arbitration Award." In the letter, the arbitrator informed the BOCC that the initial arbitration award contained a clerical error and that the last page should have read: "[T]he *actual value* ... is $2,604,500...." (emphasis in original) The amended arbitration award contained the corrected sentence. The county refused to honor the amended award.

On March 13, 1992, taxpayer submitted a Petition for Abatement and Refund, claiming that the arbitrator's clerical error resulted in an erroneous valuation. Following a hearing, the BOCC denied the petition.

Taxpayer then filed a petition with the BAA, seeking an abatement and refund based on the arbitrator's clerical error. At the hearing, the arbitrator testified that the initial arbitration award contained a typographical error on the last page. He stated that had intended to find the "actual value" was $2,604,500, rather than the "assessed value" and he had called a county employee two days after he mailed the award to notify the county of the error.

Following the hearing, the BAA ordered the BOCC to enter an abatement and refund to taxpayer based on an actual value of $2,604,500. In doing so, the BAA found that: (1) it had jurisdiction to hear the appeal; (2) taxpayer presented sufficient probative evidence to prove the valuation was incorrect; and (3) the actual value of the property should be reduced to $2,604,500. This appeal followed.

## I.

The BOCC first claims the BAA did not have jurisdiction to hear the appeal because the arbitrator's decision was final and not subject to review. The BOCC also claims that, because taxpayer pursued protest and adjustment, it is barred from seeking an abatement and refund. Under the unique circumstances of this case, we reject the BOCC's contentions.

## A.

■ An arbitration award is binding upon the parties as to the issues submitted for arbitration, and the merits of an arbitration award are not subject to review. *Foust v. Aetna Casualty & Insurance Co.,* 786 P.2d 450 (Colo.App.1989); § 39–8–108.5, C.R.S. (1993 Cum.Supp.).

■ Here, taxpayer did not seek a review of the merits of the arbitration award. Rather, taxpayer merely sought a clarification of the arbitrator's admitted clerical error. Under these particular circumstances, we hold that taxpayer was entitled to challenge the correctness of the arbitrator's award. *See Atencio v. Mid–Century Insurance Co.,* 619 P.2d 784 (Colo.App.1980) (judicial correction of arbitrator's miscalculation was proper to fulfill intent of the arbitrator).

## B.

■ The BOCC also claims that taxpayer is precluded from pursuing an abatement and refund of the taxes because taxpayer had first challenged the valuation through protest and arbitration. We disagree.

Colo.Sess. Laws 1991, ch. 309, § 39–10–114(1)(a)(I)(A) at 1963, then in effect, provided:

Except as otherwise provided in sub-sub-paragraph (D) of this subparagraph (I), if taxes have been levied erroneously or illegally, whether due to erroneous valuation for assessment, irregularity in levying, clerical error, or overvaluation, the treasurer shall report the amount thereof to the board of county commissioners, which shall proceed to abate such taxes.... If such taxes have been collected by the treasurer, the board of county commissioners shall authorize refund of the same....

Colo.Sess.Laws 1991, ch. 309, § 39–10–114(1)(a)(I)(D) at 1964, then in effect, provided:

[N]o abatement or refund of taxes levied on and after January 1, 1990, shall be made *based upon the ground of overvaluation* of property if an objection or protest to such valuation has been made and a notice of determination has been mailed to the taxpayer pursuant to section 39–5–122. (emphasis added)

■ Thus, for property tax years beginning in 1990 and thereafter, overvaluation claims under the abatement and refund procedure are prohibited if a taxpayer has previously challenged the valuation for that tax year under the protest and adjustment procedure. *D.C. Burns Realty & Trust v. Jefferson County Board of County Commissioners,* 849 P.2d 900 (Colo.App.1992).

Here, taxpayer initially protested the valuation of the property pursuant to § 39–5–122, based upon the ground of overvaluation. However, after the arbitrator entered his award, taxpayer filed a petition for abatement based on the arbitrator's clerical error and on the assessor's subsequent erroneous valuation. Since taxpayer did not base its petition on the ground of overvaluation, taxpayer was not precluded from seeking an abatement and refund.

## II.

Next, the BOCC claims the BAA erred in determining that the arbitration award was ambiguous and in allowing extrinsic evidence

to clarify the award. The BOCC also claims that the alleged error was not a "clerical error" within the meaning of § 39–10–114 and, as such, there is no authority for an abatement and refund. We reject these contentions.

### A.

### AMBIGUITY

■ Contrary to the BOCC's assertion, there was ambiguity in the arbitration award. In one sentence of the award, the arbitrator states that the "actual value" of the property is $2,604,500. However, later in the award, the arbitrator states that the "assessed value" of the property is $2,604,500. Since the assessed value is determined by using a mathematical formula based on the actual value, the arbitration award is clearly ambiguous.

■ When an order is ambiguous, the task of the reviewing court is to determine what was intended in issuing the order. To resolve an ambiguity, the entire record and the circumstances surrounding the order must be reviewed to resolve the ambiguity. *See People in Interest of A.H.,* 736 P.2d 425 (Colo. App.1987).

Here, the arbitrator telephoned and then sent a notice to the county stating he had erroneously written "assessed value" instead of "actual value." In addition, the arbitrator testified at the hearing that he intended the actual value to be $2,604,500. The BAA properly allowed this extrinsic evidence to explain the ambiguity in the award.

### B.

### CLERICAL ERROR

■ In support of its contention that the discrepancy at issue is not a "clerical error" within the meaning of § 39–10–114, the BOCC claims that, to be within the ambit of that statute, the error must be due, at least in part, to the taxing authority. We reject the BOCC's contention.

Although the term "clerical error" is not specifically defined in § 39–10–114, it has been analyzed in case decisions. Thus, cleri-

cal errors include transcription mistakes, *see West Pueblo Ditch & Reservoir Co. v. Bessemer Irrigating Ditch Co.,* 72 Colo. 224, 210 P. 601 (1922), as well as errors of law, mistakes appearing on the face of the record, and other defects or omissions in the record. *Coquina Oil Corp. v. Larimer County Board of Equalization,* 770 P.2d 1196 (Colo.1989).

It is true that, prior to 1991, the term "clerical error" did not include an error made solely by the taxpayer and relied upon by the taxing authority. *Citibank, N.A. v. Board of Assessment Appeals,* 826 P.2d 871 (Colo.App. 1992). *See Coquina Oil Corp. v. Board of Equalization, supra* (no recovery when error solely attributable to taxpayers). However, § 39–10–114 was amended in 1989 to allow an abatement to a taxpayer who had made a clerical error in completing personal property schedules. *See* § 39–10–114, C.R.S. (1993 Cum.Supp.).

■ Here, the error was not attributable to either the taxpayer or the taxing authority. We conclude that § 39–10–114 allows a taxpayer to file for an abatement and refund when an arbitrator has made a clerical error in an award and the award does not reflect the valuation intended by the arbitrator.

■ In interpreting a statute, a reviewing court must presume that the General Assembly intended a just and reasonable result and must seek to avoid an interpretation that leads to an absurd result. In addition, "the taxing power and taxing acts are construed strictly against the taxing authority and in favor of taxpayer." *Utah Motel Associates v. Denver County Board of Commissioners,* 844 P.2d 1290, 1295 (Colo.App.1992).

In our view, the BOCC's interpretation of "clerical error" would lead to an unjust and absurd result because it would preclude a taxpayer from filing for an abatement or refund when that taxpayer has paid excessive taxes because of an arbitrator's clerical error. We do not believe the General Assembly intended such an unjust result.

### III.

■ The BOCC next claims the arbitrator did not have the authority to amend his award and change the valuation. We do not agree.

Here, the arbitrator did not change the valuation; instead, he merely corrected his clerical error. Thus, the BOCC's contention is without merit.

■ We also reject the BOCC's claim that the original award must stand because of the passage of time. At the hearing, the arbitrator testified that within two days of entering his award he called the county assessor's office to inform them of his error and that the county employee told him she would notify the assessor but that she failed to do so. Also, he stated that he sent the county a letter notifying it of the error, along with the amended award. This testimony was not controverted, and under these circumstances, we conclude that the arbitrator attempted to remedy his error within a reasonable time.

### IV.

Finally, the BOCC claims there was insufficient evidence presented at the hearing to support the BAA's valuation. Specifically, the BOCC claims that the arbitrator did not have the authority to amend the award and, as such, the amended arbitration award could not serve as evidence. The BOCC also claims that it presented the only competent evidence of valuation which indicated an actual value of either $8,981,034 or $18,610,622.

We have previously determined that the arbitrator properly amended his award so as to reflect his true intent and that the arbitrator's testimony was proper. Accordingly, there is competent evidence to support the BAA's finding that the actual value of the property was $2,604,500.

In reaching this conclusion, we reject the BOCC's contention that the BAA was required to conduct a *de novo* hearing. *D.C. Burns Realty & Trust v. Jefferson County Board of County Commissioners, supra,* merely states that the BAA is authorized to conduct *de novo* evidentiary proceedings; it does not require the BAA to do so.

The order is affirmed.

PIERCE and CRISWELL, JJ., concur.